# AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER
# RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Virgil D. Reichle Jr., being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the United States Secret Service (USSS) and have operated in this capacity since 1999. Prior to this, I was employed as a Colorado State Trooper from 1994 to 1999. I received formal training at the Federal Law Enforcement Training Center in Glynco, Georgia, and the United States Secret Service (USSS) Academy in Beltsville, Maryland. I am currently assigned to the Kansas City Field Office and am also a member of the Kansas City Electronic Crimes Task Force. Based on my training and experience, I am familiar with the means by which individuals use computers, electronic devices and information networks to commit various crimes.

2. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4. This affidavit is being submitted to support an application for a warrant to search electronic devices and digital storage media, further described in Attachment A, seized pursuant to circumstances leading to probable cause and as annotated in a previous search warrant affidavit for 223 N. Oak Drive, Unit A, Belton, MO 64012. (Reference is made to a search warrant obtained

via the honorable John T. Maughmer, Judge, Western District of Missouri, Kansas City, MO on February 28, 2019, U.S. District Court case #19-SW-00071-JTM). In accordance with the provisions annotated on attachment B, the following items were seized and are currently in the possession of the USSS evidence vault located at 1200 Grand Avenue, Suite 1150, Kansas City, MO:

   a. Lenovo computer Central Processing Unit (CPU), Model: H505S, USSS Evidence #2082019CE00012
   b. 6 (six) Flash/Thumb Drives, USSS Evidence #2082019CE00012
   c. HP laptop computer, Model: XT19001, USSS Evidence #2082019CE00013
   d. Acer computer CPU, Model: Aspire, USSS Evidence #20820192082019CE00013
   e. Motorola cell phone, Model: XT19001, USSS Evidence #2082019CE00013
   f. HP computer CPU, S/N: MXL92401P, USSS Evidence #2082019CE00014
   g. One (1) Flash/Thumb Drive, USSS Evidence #2082019CE00018

for alleged crimes in violation of Title 18 USC § 471 (Manufacturing Counterfeit Obligations) and Title 18 USC § 371 (Conspiracy).

   5.   The applied-for warrant would authorize the forensic examination of the devices for the purpose of identifying electronically stored data particularly described in Attachment B.

**PROBABLE CAUSE**

**A.   February 17, 2019, Peculiar, MO, Country Mart CFT**

   6.   On February 20, 2019, I received a call from Detective Doug Catron, Peculiar Police Department (PPD), in Peculiar, Missouri, regarding a counter currency (CFT) case. I was informed by Detective Catron that on February 17, 2019, PPD Officer T. Zaharsky responded to Country Mart, 501 Schug Ave., Peculiar, MO, regarding a CFT complaint. Upon arrival, Officer Zaharsky met with employees of Country Mart who reported a W/M, later identified as David Donaldson, had attempted to pass two CFT $20 Federal Reserve Notes (FRN's) in exchange for

2

merchandise. The clerks detected the FRN's as being CFT and declined to accept them. Suspect David Michael Donaldson subsequently retook possession of the CFT FRN's and departed in a red Ford F-150, bearing Missouri license plate number 7TC443. Officer Zaharsky reviewed video from the Country Mart surveillance system and a short time later he located the suspect vehicle in the parking lot at Casey's General Store, 625 N. State Route J, Peculiar, MO.

7. Officer Zaharsky made contact with the driver of the vehicle who identified himself with an Arizona Driver's License as David Michael Donaldson. Donaldson indicated that he was currently residing at 220 Oak Drive, Unit B, Belton, MO. During questioning in the parking lot, Donaldson admitted that he attempted to pass two $20 FRN's at Country Mart, but denied knowing that they were CFT. Donaldson further indicated that he threw both CFT $20 FRN's in the trash can upon departing Country Mart. Officer Zaharsky asked Donaldson if he had any additional currency in his possession, and he retrieved a $50 FRN, Serial Number (SN) ML06242239B, and a $100 FRN, Serial Number (SN) LK52444671D from his wallet. Officer Zaharsky subjected the FRN's to further scrutiny and determined that they were both CFT. As a result, Donaldson again stated that he did not know the FRN's were CFT and suggested that he had inadvertently obtained them as change from other merchants in the area. Officer Zaharsky took custody of the CFT FRN's and released Donaldson without charges. Officer Zaharsky returned to Country Mart to locate the two CFT $20 FRN's that were allegedly deposited in the trashcan but he was unable to locate the two CFT $20 FRN's.

8. During my conversation with Detective Catron, PPD, he indicated that while conducting a query of a regional law enforcement database, it was discovered that Belton PD (BPD), Belton, MO, also had a recent report of CFT involving David Michael Donaldson.

B. **February 5, 2019, Belton, MO, Salvation Army CFT**

9. I reviewed the BPD report regarding an incident that occurred on February 5, 2019, at the Salvation Army, located at 112 Cedar Tree, Belton, MO. The Salvation Army manager reported to BPD Officer Smith that a man attempted to pass a CFT $20 FRN, with SN MK39368627C in exchange for merchandise. The manager suspected the FRN was CFT and used a CFT Detector Pen that determined it to be CFT. The manager refused to accept the CFT $20 FRN and confiscated it.

10. The suspect then walked out of the store and entered the right front passenger seat of a red Ford Focus, bearing Missouri license plate number PR8B8F, which was still parked in the lot when BPD Officer Smith arrived. Officer Smith approached the W/M suspect sitting in the front right passenger compartment and ascertained that his name was David Michael Donaldson. Donaldson stated that he presented a $20 FRN at the Salvation Army but claimed that he had no idea it was CFT upon presenting it. In addition, Donaldson claimed that he received it as change from a previous transaction that he had at Walmart in Raymore, MO. Officer Smith then spoke with the driver/owner of the vehicle and identified her as Becky June Holloway, 223 N. Oak Drive, Belton, MO. Ms. Holloway claimed that she knew David Michael Donaldson through a mutual friend and that she had no knowledge of Donaldson having attempted to pass a CFT $20 FRN at the Salvation Army.

C.  **Secret Service Review of Related Cases**

11. I subsequently established contact with Detective Jeff Richardson, BPD, regarding my interaction with Detective Doug Catron, PPD, as it relates to CFT FRN's being passed throughout Cass County, MO. Detective Richardson referred me to three additional BPD cases involving CFT FRN's and a regional crime bulletin that he recently received from the Lee's Summit Police Department (LSPD), Lee's Summit, MO, regarding CFT FRN's. Upon review of

4

these cases, I learned that a suspect identified as Dakota Wesley Williams was responsible for the passing and/or possession of the CFT FRN's. In addition, it is noted that Williams resides at the residence of Becky June Holloway, 223 N. Oak Drive, Unit A, Belton, MO. By reviewing the above-referenced case files, I learned the following information.

12. On January 9, 2019, BPD Officer Lane responded to an incident involving the attempted passing of a CFT $20 FRN, at Dollar General, 302 E. North Ave., Belton, MO. Upon arrival, Officer Lane met with a Dollar General clerk who reported a white male suspect attempted to pass CFT $20 FRN SN: JL44523311F in exchange for merchandise. The suspect was identified as Dakota Wesley Williams and he was still at the scene when Officer Lane arrived. Williams acknowledged that he attempted to make a purchase with a $20 FRN but denied having any knowledge that the FRN was CFT prior to tendering it. In addition, Williams claimed that he received it as change from a previous transaction at Shell, 7905 E. 171st Street, Belton, MO. Officer Lane subsequently conducted a database query of Williams and ascertained that he had an active arrest warrant from Johnson County, Kansas, for Identity Theft charges. Officer Lane arrested Williams pursuant to the warrant.

13. Additionally, on February 2, 2019, The Lee's Summit Police Department (LSPD), Lee's Summit, MO, responded to an incident of larceny involving Williams at Macy's, 900 NW Blue Parkway, Lee's Summit, MO. According to LSPD reports, Williams and two co-conspirators were stealing merchandise from Macy's. One of the suspects was apprehended at the store. However, Williams and another co-conspirator fled from the store and a high-speed vehicle pursuit ensued. Ultimately, the fleeing suspect vehicle was stopped and Williams was arrested and found to be in possession of a baggy of suspected methamphetamine and CFT FRN's. The following is an inventory of the CFT FRN's:

5

One, CFT $10 FRN, SN: JF10418572A
One, CFT $10 FRN, SN: MH69435940A
One, CFT $20 FRN, SN: MD77904640D
One, CFT $20 FRN, SN: ML87159571L
Three, CFT $20 FRN's, SN: MJ48417549B
Three, CFT $20 FRN's, SN: MK22387896B
One, CFT $100 FRN, SN: HL63614682E

14. I also reviewed BPD reports and video surveillance footage involving Williams on February 5, 2019, and February 12, 2019, at the Heart-N-Hand store, 200 B Street, Belton, MO. On February 5, 2019, a CFT $100 FRN was successfully passed in exchange for merchandise. On February 12, 2019, a CFT $20 FRN SN: JL44523311F was successfully passed by the same suspect in exchange for merchandise. Upon review of the video from the incident on February 5, 2019, and February 12, 2019, BPD Detective Richardson and I noted that the physical features of the suspect are consistent with those of Dakota Wesley Williams. In addition, the video from February 12, 2019, also captured the image of suspect David Michael Donaldson standing next to the cash register. It is also noted that SN: JL44523311F, is the same serial number that suspect Dakota Wesley Williams attempted to pass on January 9, 2019, at Dollar General, Belton, MO.

15. I also reviewed a BPD report from an incident that occurred on February 13, 2019, at Zed's Express Superstore, 844 N. Scott Ave., Belton, MO. BPD Officer Hepner was dispatched to an incident involving the attempted passing of a CFT $50 FRN. Upon arrival, Officer Hepner met with the clerk who stated that a white middle-aged female, with strawberry blond hair attempted to pass a CFT $50 FRN, in exchange for gasoline. Upon being presented with the CFT $50 FRN, SN: MH1943968A, the clerk determined that the FRN was CFT and seized it. The suspect claimed that she received it from the bank and requested that it be returned to her so that she could confront the bank officials. The clerk refused to return the CFT $50 FRN. The suspect then exited the store and entered the front right passenger compartment of a black Honda with

6

unknown license plate number and fled the scene. Officer Hepner concluded his investigation and retrieved the video from the store's surveillance system. Detective Richardson and I subsequently reviewed the video and I noted that the physical characteristics were consistent with those of suspect Becky June Holloway.

**D.     Attempts to Contact CFT Suspects**

16.    On February 21, 2019, I traveled to the residence of suspects Dakota Wesley Williams and Becky June Holloway, at 223 N. Oak Drive, Unit A, Belton, MO. My purpose in doing so was to locate suspect David Michael Donaldson related to the ongoing investigation. During my conversation with suspect Becky June Holloway, she claimed to know suspect David Michael Donaldson through a mutual friend named Erica Fleetwood, 220 Oak Drive, Unit B, Belton, MO. Upon concluding my conversation, I left her my business card and asked her to contact me if she locates him.

17.    On February 21, 2019, I traveled to 220 N. Oak Drive, Unit B, Belton, MO, for the intended purpose of interviewing Erica Fleetwood and her boyfriend, suspect David Michael Donaldson. Upon knocking on the door, there was no answer. Upon looking through the front window, it appeared that the unit had recently been vacated. In addition, I observed a trash can on the south side of the residence that was full of debris/refuse. I subsequently conducted a query of the Cass County Clerk & Recorder database in an attempt to locate the landlord of the aforementioned residence. My search ultimately revealed that the owner of this residence is Expo Real Estate Holdings, 4741 Central Ave, Box 2300, Kansas City, MO. I spoke to the agent of Expo Real Estate, who acknowledged that the residence is currently vacant and who provided verbal consent for me to examine the contents of the trash can. I did not locate any

evidence to suggest that CFT FRN's were being manufactured at 220 N. Oak Drive, Unit B, Belton, MO.

E. **Trash Pull from 223 N. Oak Drive, Unit A**

18. On February 26, 2019, BPD Detective Richardson and I successfully retrieved numerous bags of trash that were on the street/curb at 223 N. Oak Drive, Unit A, Belton, MO. Upon conducting an inspection of their contents, we located several items of evidentiary value:

   a. Front/back color image of CFT $20 FRN, SN: ML53394912L.

   b. Uncut 8 ½" x 11" sheet of paper containing color front images of CFT $20 FRN, SN: ML87965801L, CFT $20 FRN, SN: ML53394912L, CFT $20 FRN, SN: IL10617584C. (Note: Upon conducting a query of the USSS records, I learned that on or about February 19, 2019, Salvation Army, 1223 E. Santa Fe, Olathe, KS, received one CFT 20 FRN, SN: ML87965801L.)

   c. Three uncut 8 ½" x 11" sheets of blank light beige printer paper consistent with the paper being used to produce the CFT FRN's.

During the inspection of the refuse/trash, Detective Richardson and I also found evidence of illicit drugs. Specifically, we located ten small baggies with white powder residue on the inside. Detective Richardson subsequently conducted a reactive field test and determined that there was a presumptive positive presence of Methamphetamine.

19. Based upon my training and experience, persons who produce this type of CFT U.S. currency utilize inkjet/toner technology. A desktop-type publishing operation is frequently needed to facilitate the production of CFT United States currency. They typically use a computer, including a CPU (central processing unit), hard drives, media disks, color printer, monitor, scanner, color copier and digital storage media. They need paper stock and usually use a paper cutter, pens and markers to produce the counterfeit currency.

20. On March 1, 2019, federal search warrant 19-SW-00071-JTM was executed at 223 Oak Drive, Unit A, Belton, MO. Various items of evidentiary value were located, to include but

not limited to $1,030.00 in CFT FRN's of various denominations, a commercial paper cutter, and various electronic components, to include a laptop computer, three Central Processing Units (CPU's), computer monitors, laser jet printer, seven flash/thumb drives and a cell phone described more fully in Attachment A.

21. On March 1, 2019, BPD Detective Roberts and I conducted custodial interviews of various adult individuals that were removed from the residence pursuant to the execution of the search warrant. These individuals were identified as Sean Worley, Erica Fleetwood, Hali Worley, Becky Holloway, Trey Sibley and David Michael Donaldson. They were all advised of their rights, acknowledged their rights and agreed to be interviewed without an attorney present. In summary, Shawn Worley, Hali Worley, Becky Holloway, Trey Sibley and David Donaldson stated that they had all witnessed Dakota Wesley Williams producing CFT FRN's using computer equipment at 223 Oak Drive, Unit A, Belton, MO and that he had been doing so for approximately 30-60 days. However, only David Donaldson confessed that he had conspired and obtained CFT FRN's from Dakota Williams and subsequently passed these FRN's to unwitting merchants in violation of Title 18, United States Code, Section 472.

22. These devices are currently in the lawful possession of the US Secret Service. They came into the US Secret Service's possession pursuant to the execution of federal search warrant 19-SW-00071-JTM.

23. The devices are currently in storage at the USSS evidence vault located at 1200 Grand Avenue, Suite 1150, Kansas City, Missouri. In my training and experience, I know that the devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the devices first came into the possession of the USSS.

9

**TECHNICAL TERMS**

24. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some

10

computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

c. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the devices. This information can sometimes be recovered with forensics tools.

26. There is probable cause to believe that things that were once stored on the devices may still be stored there, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an

11

active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

27. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their uses, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

12

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

28. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

29. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

30. I know from my training and experience, coupled with the evidence obtained during the course of this investigation, that individuals may use computers and other electronic devices to produce CFT images, data thieves may maintain ledgers on such devices, and individuals may also use these devices to access communication applications (i.e. email, social media) to communicate in furtherance of their criminal activities with each other. I submit that this affidavit supports probable cause for a warrant to search the cellular telephone, computers/CPU's, and electronic media described in Attachment A and seize the items described in Attachment B.

Respectfully submitted,

Virgil D. Reichle Jr.
Special Agent
United States Secret Service

Subscribed to me and sworn before me this
__7th__ day of March 2019.

HONORABLE JOHN T. MAUGHMER
United States Magistrate Court Judge
Western District of Missouri